**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOY LUCRETIA CLARK,<br>　　Plaintiff, | : | |
| | : | |
| | : | |
| 　　v. | : | CIVIL ACTION NO. 26-104 |
| | : | |
| PHILADELPHIA PARKING | : | |
| AUTHORITY, *et al.*, | : | |
| 　　Defendants. | : | |

**<u>MEMORANDUM</u>**

**Marston, J.**                                                                                       **April 13, 2026**

Plaintiff Joy Lucretia Clark filed this *pro se* civil action asserting violations of her civil

rights when her car was towed and impounded.  ("Compl." (Doc. No. 2) at 1.)  She names the

Philadelphia Parking Authority ("PPA"), the City of Philadelphia ("the City"), and John/Jane

Does 1–10 as Defendants.  (*Id.*)  For the following reasons, the Court will grant Clark's request

to proceed *in forma pauperis* and dismiss the Complaint pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).

**I.     FACTUAL ALLEGATIONS**[1]

On November 26, 2025, Clark's vehicle was allegedly parked in a private retail parking

lot in Philadelphia.  (Compl. at 3.)  The vehicle was towed and impounded by the PPA and

---

[1] The factual allegations set forth in this Memorandum are taken from Clark's Complaint, (Doc. No. 2), and attached exhibits, (Doc. No. 2-1).  The Court adopts the pagination assigned by the CM/ECF docketing system.  Grammar, punctuation, and emphasis in quoted material are cleaned up where necessary.

subjected to escalating towing and storage fees.[2] (*Id.*) Clark was "present at the scene when the vehicle was towed and contemporaneously objected to the seizure."[3] (Doc. No. 2-1 at 23.)

The PPA issued a "Live Stop Impoundment Notice to Owner" addressed to Clark and dated November 27, 2025, which memorialized the November 26 impoundment of the car as authorized by the Philadelphia Municipal Court Traffic Division and pursuant to Pennsylvania Motor Vehicle Code 75 Pa. Cons. Stat. § 6309.2.[4] (*Id.* at 48.) The Notice stated that Clark could recover her vehicle by appearing in person at the Philadelphia Municipal Court Traffic Division to resolve outstanding registration or operating privilege issues; paying all outstanding parking, red light camera, and speed camera violations; and bringing the administrative release from the Traffic Court and other documents to the tow lot. (*Id.*) The Notice continued that if Clark could not pay the entire amount due for her violations, she could inquire about a payment plan. (*Id.*)

---

[2] Publicly available court dockets reflect that, on November 26, 2025, Clark was issued a citation for driving while her operating privilege was suspended or revoked, in violation of 75 Pa. Cons. Stat. § 1543(a). *See Commonwealth v. Clark*, No. MJ-01001-TR-0072300-2025 (Mag. Dist. Philadelphia). The Municipal Court Traffic Division scheduled the matter for a summary trial on February 4, 2026. *Id.* The case docket reflects that proceedings occurred on February 4, 2026, but Clark was not present. *Id.* Clark was found guilty of the driving offense. *Id.* In addition, Clark has attached a document to her Complaint that reflects she was also cited for an alleged retail theft at Target on November 26, 2025. (*See* Doc. No. 2-1 at 16 (referencing *Commonwealth v. Clark*, No. MC-51-SU-0013396-2025 (M.C. Philadelphia).) That document reflects that Clark sought a continuance of her summary trial, which was granted, and the matter was set for trial on February 5, 2026. *See id.* She was then convicted of retail theft in violation of 18 Pa. Cons. Stat. § 3929(a)(1). *See id.* The latter offense does not appear to be related to the events alleged in the Complaint.

[3] In another Exhibit attached to her Complaint, Clark maintains that she "received no contemporaneous notice of: who authorized the tow, where the vehicle was taken, the legal basis for the tow, or the alleged nature of any 'live stop.'" (Doc. No. 2-1 at 7.)

[4] 75 Pa. Cons. Stat. § 6309.2(a) provides, in relevant part: "If a person operates a motor vehicle . . . on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle . . . or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified."

2

The Notice further warned that if the vehicle remained impounded for 15 days and she had not requested an administrative hearing or made payment arrangements in that time, the PPA would file a petition in the Philadelphia Court of Common Pleas to auction the vehicle.  (*Id*.)  The Notice contained a "[p]lanned auction date" of December 29, 2025.[5]  (*Id*.)

On December 4, 2025, Clark filed a petition for emergency relief from the auction of her vehicle in the Philadelphia County Court of Common Pleas.  (Compl. at 3.)  The Court of Common Pleas entered an *ex parte* order on December 5, 2025, partially granting Clark's request to temporarily stay the auction of her vehicle pending the resolution of an apparent complaint she made to the Internal Affairs Division of the Philadelphia Police Department.  (*Id*.; Doc. No. 2-1 at 42.)  The order also directed that "Plaintiff may seek release of the vehicle and abatement of storage fees through the proper procedural channel of an administrative hearing before Municipal Court Traffic Division, and any subsequent appeal of such a hearing to Common Pleas, as noted in the PPA Live Stop Impoundment Notice included as an exhibit in her petition."  (Doc. No. 2-1 at 42 n.1.)  Clark filed a second emergency petition for injunctive relief, which the Court of Common Pleas dismissed for lack of jurisdiction in an order entered on December 22, 2025.  (*Id*. at 49.)  That order also expressly referred Clark to the December 5 order "that suggested seeking relief via the administrative appeal process."  (*Id*.)

PPA then sought reconsideration and clarification of the December 5 order, arguing that the PPA would have no way of obtaining information about the outcome of Clark's investigation through the Philadelphia Police Department's Internal Affairs Division.  (*Id*. at 56.)  The Court of Common Pleas granted that motion on December 23, 2025, and amended its prior order to

---

[5] Although she does not specify when she received the Notice, Clark had it by December 4, 2025, at the very latest, because the Court of Common Pleas noted in its December 5 order that Clark attached a copy of that Notice to her petition in that court.  (*See* Doc. No. 2-1 at 42 n.1.)

impose the stay for ninety days from December 5, while the police investigation was pending. *Commonwealth v. Clark*, No. MJ-01001-TR-0072300-2025 (MJ Philadelphia), Docket Entry 19-25125019.  On January 5, 2026, Clark filed yet another emergency petition, which the Court of Common Pleas dismissed that same day as procedurally improper because Clark had failed to exhaust her administrative remedies.  (*See* Doc. No. 2-1 at 41.)  In the Order, the Court explained: "By letter of November 27, 2025, from the Philadelphia Parking Authority, Plaintiff Joy Clark was directed to appeal the impoundment by appearing in person at 800 Spring Garden Street, Philadelphia, Pennsylvania 19123.  However, Plaintiff did not provide this Court with any proof that the appeal was done, and this Court cannot proceed until Plaintiff exhausts her administrative remedies.  *Funk v. Dept. of Environmental Protection*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013)."  (*Id*. at n.1.)

On January 6, 2026, the day after the Court of Common Pleas dismissed her motion for failure to exhaust administrative remedies, Clark filed this federal civil rights action.  (Compl. at 1.)  Clark claims that "Defendants have refused to release the vehicle, continued to accrue fees, and conditioned release on payment, without notice, hearing, or written adjudication."  (*Id.*)  Without specifying a date, Clark asserts that she "complied with Defendants' instructions and appeared at Traffic Court and presented herself to the PPA seeking release of her vehicle."  (*Id*. at 3.)  She complains that she "was not provided notice of any administrative hearing, no neutral decision-maker, and no written adjudication," and was "told only to 'bring $475,' while simultaneously being informed that storage fees were continuing to accrue daily."  (*Id*.)  She says that her vehicle was not released.  (*Id*. at 4.)  She raises claims under 42 U.S.C. § 1983 for

alleged violations of her rights under the Fourteenth and Fourth Amendments and seeks injunctive, declaratory, and compensatory relief.[6]  (*Id.* at 4–6.)

## II.    STANDARD OF REVIEW

The Court will grant Clark's motion to proceed *in forma pauperis* because it appears that she is unable to pay the filing fees to commence this action.  Under 28 U.S.C. § 1915(e)(2)(B), the Court must screen and dismiss the Complaint if it is frivolous, fails to state a claim for relief, or seeks damages from an immune defendant.  *Id.* § 1915(e)(2)(B)(i)-(iii).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  A complaint states a claim if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged in Clark's Complaint as true, draw all reasonable inferences in her favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556

---

[6] Clark seeks a declaratory judgment that her rights have been violated.  (Compl. at 2.)  Her request for declaratory relief is improper because declaratory relief is unavailable to adjudicate past conduct.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84; *see also Taggart v. Saltz*, No. 20cv3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

The Court construes the allegations of a *pro se* complaint liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23cv1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

Clark alleges federal constitutional claims through 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Claims Against John/Jane Does 1–10

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v.*

6

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Clark names "John/Jane Does 1-10" as Defendants in this action.  (*See* Compl. at 2.)  Yet, aside from the brief mention in the identification of parties ("PPA or City employees or officials whose identities are presently unknown and who participated in, authorized, or enforced the conduct described herein," (*id*.)), Clark makes no factual allegations or legal claims against any Doe in the rest of the Complaint, nor does she even reference any conduct taken by a particular individual.  Because she has not described how each individual unknown defendant was involved in the events and occurrences giving rise to the claims, she has not stated a plausible constitutional violation under § 1983 against the Doe Defendants.  *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Moreover, to the extent that Clark refers collectively to "Defendants" when pleading facts and legal claims, this is likewise insufficient to plead a claim under § 1983.  *See Walker v. Wetzel*, No. 22cv1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (affirming district court's conclusion that generalized reference to "officers" did not allege personal involvement); *Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the "repeated and collective use of the word 'Defendants' fail[ed] to name which specific Defendant engaged in the specific conduct alleged" (quotation marks omitted)).  The claims alleged against John/Jane Does 1–10 will be dismissed without prejudice for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

### B.      Constitutional Claims Against the City and PPA

Clark names the City and PPA as Defendants, and the Court will consider their liability together for the purposes of Clark's claims here.[7] *See King v. Phila. Parking Auth.*, 97 F. Supp. 3d 649, 653–57 (E.D. Pa. 2015) (analyzing claims against PPA as municipal liability claims under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)), *aff'd sub nom., King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016).  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against a municipality.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20cv1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).  "It is well-settled that, if there is no violation in the

---

[7] The liability of the City and PPA for alleged constitutional deprivations may differ in some situations.  *See King*, 654 F. App'x at 110 (confirming district court's assessment that the City could be liable for any of plaintiff's claims, but PPA would be liable only for claims related to ticketing enforcement).  But at this juncture, any distinction is immaterial given Clark's failure to plausibly state any violations of her constitutional rights.

first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Clark alleges that the City and PPA violated her rights under the Fourth Amendment through an unreasonable seizure of her vehicle and to procedural and substantive due process under the Fourteenth Amendment. (Compl. at 4–5.) But these proposed claims are not plausible, so Clark cannot state a municipal liability claim against the City or PPA.

### 1.  Unlawful Seizure Claim

Clark argues that her Fourth Amendment rights were violated by the Defendants' retention of her vehicle "beyond any lawful justification." (Compl. at 5.) The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Where police have directly witnessed a traffic violation, a traffic stop is a reasonable seizure under the Fourth Amendment. *See Kansas v. Glover*, 589 U.S. 376, 386 (2020) (holding that traffic stop was lawful where "[u]nder the totality of the circumstances of this case, [police] drew an entirely reasonable inference that [the plaintiff] was driving while his license was revoked"); *see also United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."); *United States v. Yusuf*, 993 F.3d 167, 171–72 (3d Cir. 2021) (traffic stop on the basis of a partially obstructed license plate was conducted within the bounds of the Fourth Amendment).

The basis for Clark's Fourth Amendment claim against the City and PPA is not at all clear. She does not discuss the circumstances or legality of the stop, nor does she allege that the

9

City and the PPA were involved.[8]  Rather, her argument skews closer to a claim that she has been denied property without due process, which the Court discusses below.

The Court observes that, with respect to the towing and impoundment of her car, Pennsylvania law permits the immobilization and towing of vehicles when an officer confirms that a person is operating a vehicle while her operating privileges are suspended or revoked.  *See* 75 Pa. Cons. Stat. § 6309.2(a).  Under that provision, the officer "shall immobilize the vehicle . . . or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent . . . " *Id*.  Here, the state court docket (a copy of which is among Clark's attachments to her Complaint) reflects that, on November 26, Clark was cited for driving while her operating privilege was suspended or revoked, in violation of 75 Pa. Cons. Stat. § 1543(a).  *See Clark*, No. MJ-01001-TR-0072300-2025; (Doc. No. 2-1 at 58–59).  Thus, once officers learned that Clark was operating the vehicle while her license was suspended or revoked—an offense Clark fails to mention in the Complaint but for which she was found guilty on February 4, 2026—"it was permissible for them to tow the car pursuant to Pennsylvania law." *Perry v. Faddis*, No. 22cv4012, 2023 WL 144432, at *5 n.11 (citing *Sheller v. City of Philadelphia*, No. 11cv2371, 2012 WL 4754820, at *6 (E.D. Pa. Oct. 5, 2012) (explaining that the language of the statute "provides law enforcement officers with the option to tow based on their determination of the interest of public safety")).  The Court will thus dismiss the Fourth Amendment allegation for failure to state a claim.

---

[8] Clark makes no mention of the retail theft charge that she incurred on the same day, nor has she named any Defendants in this action who were apparently involved in those events.  The Court will only address the traffic offense to the extent it is apparently implicated in the impoundment of her car.

### 2. Procedural Due Process Claim

Clark asserts that her due process rights were violated when "Defendants deprived [her] of her property without notice and without a meaningful opportunity to be heard," and by conditioning the release of her vehicle on payment of the amount she owed. (Compl. at 5.) The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). "[V]iolations of state or municipal law do not, standing alone, necessarily state constitutional claims under 42 U.S.C. § 1983." *King*, 654 F. App'x at 111. The most critical aspect of due process is whether a party has had "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). A litigant fails to state a procedural due process claim "if the state has an adequate post-deprivation procedure or remedy available." *Revell v. Port Auth. of N.Y. and N.J.*, 598 F.3d 128, 139 (3d Cir. 2010). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Clark asserts a protected property interest in the vehicle, but she has not plausibly alleged that she experienced an absence of available due process after it was towed and impounded. Rather, the factual allegations indicate that Clark was afforded all the process due, but she did not utilize the procedures available to her. *See Alvin*, 227 F.3d at 116 (explaining that, to state a

procedural due process claim, the plaintiff must have used the available processes unless they are "unavailable or patently inadequate"). The post-deprivation procedures for owners or lienholders to regain possession of an impounded vehicle are provided in 75 Pa. Cons. Stat. § 6309.2 and Philadelphia Code § 12-2406. Section 6309.2 of the Pennsylvania Motor Vehicle Code specifically requires owners of cars impounded pursuant to a Live Stop to provide proof of registration and financial responsibility, pay all fines and costs associated with the towing and storage, and pay any other outstanding fines and costs. 79 Pa. Cons. Stat. § 6309.2(d)(1)(i) and (ii)(A). The "Live Stop Impoundment Notice to Owner" issued to Clark on November 27 detailed the precise steps that she needed to take to recover possession of her vehicle, in light of her alleged offense of driving while her operating privilege was suspended. (Doc. No. 2-1 at 48.) The first step was to appear in the Philadelphia Municipal Court Traffic Division to obtain an Administrative Release by "resolv[ing] any outstanding vehicle registration and/or operating privilege issues." (*Id.*) Second, Clark needed to appear in person at the Municipal Court or other authorized location and pay all outstanding violations and towing/storage fees or, if she could not afford that, inquire about a payment plan. (*Id.*) Third, she needed to bring the Administrative Release, payment receipt, and other required documents to the tow lot to obtain her car. (*Id.*)

Instead of following the established procedures to recover possession, however, Clark filed an emergency petition in the Court of Common Pleas to stay the auction of her car—a step that would only occur in the future if she failed to request an administrative hearing or make payment arrangements within fifteen days, and if the PPA then filed a petition. (Compl. at 3; Doc. No. 2-1 at 48.) The Court of Common Pleas granted her request to stay the auction (ultimately limited to ninety days), while also reminding her that she was obliged to follow proper administrative procedures to regain possession of her car. *See* Doc. No. 2-1 at 42 n.1

(December 5, 2025 Order instructing that Clark could "seek release of the vehicle and abatement of storage fees through the proper procedural channel of an administrative hearing before Municipal Court Traffic Division, and any subsequent appeal of such a hearing to Common Pleas, as noted in the PPA Live Stop Impoundment Notice included as an exhibit in her petition."). Even though that court reminded her on subsequent occasions to follow the proper administrative procedures, Clark does not allege that she heeded that directive. (*See id.* at 40 n.1 (Court of Common Pleas December 23, 2025 Order providing "Petitioner may seek release of the vehicle and abatement of storage fees through the proper procedural channel of an administrative hearing before the Municipal Court Traffic Division per 75 Pa. C. S. § 6309.2 and 12 Phila. Code § 2406."); and 41 n.1 (Court of Common Pleas January 5, 2026 Order stating "By letter of November 27, 2025, from the Philadelphia Parking Authority, Plaintiff Joy Clark was directed to appeal the impoundment by appearing in person . . . However, Plaintiff did not provide this Court with any proof that the appeal was done, and this Court cannot proceed until Plaintiff exhausts her administrative remedies.").)

In her Complaint in this Court, Clark asserts that, at some unspecified time, she "complied with Defendants' instructions and appeared at Traffic Court and presented herself to the PPA." (Compl. at 3.) She claims that she was "not provided notice of any administrative hearing, no neutral decision maker, and no written adjudication," but was instructed to "bring $475." (*Id.*) From this vague, conclusory statement, it is unclear whether Clark is asserting that she requested an administrative hearing regarding the impoundment and did not receive one, or that she expected to be provided with an administrative hearing without requesting one.[9] Clark

---

[9] When a vehicle has been impounded, an owner may make a written request for an expedited hearing before a hearing examiner pursuant to the Regulations of the Bureau of Administrative Adjudication to determine whether reasonable cause existed to believe that the impounded vehicle was in

admits that she was told the amount that would be necessary to regain possession of her car. (*Id*.)  In any event, if Clark was dissatisfied, her recourse was to follow the appropriate procedures provided, including those for seeking additional review and/or appeal, instead of filing more baseless motions in the Court of Common Pleas.[10]  As of January 5, 2026, Clark had not properly availed herself of that process.  (*See* Doc. No. 2-1 at 41 n.1.)  Her failure to follow the procedures does not make the procedures themselves inadequate or unconstitutional.  *King*, 97 F. Supp. 3d at 657 (concluding that plaintiff's failure to appeal enforcement of parking code "did not render unconstitutional the process he was given").  And Clark cannot circumvent the procedures "on the books" by filing an action in federal court to obtain the relief she desires. *Alvin*, 227 F.3d at 116.  For these reasons, Clark fails to state a plausible procedural due process claim, and it will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.  Substantive Due Process Claim

A plaintiff may also assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.  *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (quoting *Daniels,* 474 U.S. at 331)).  To be plausible, this type of due process claim must allege governmental conduct that "'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)).  In

---

violation of traffic laws.  *See* Phila. Code § 12-2406(1)(A).  Philadelphia Code Section 12-2808 provides for appeals from decisions of hearing examiners.

[10] It does not appear that Clark fully availed herself of the opportunity to challenge the underlying offense that constituted the basis for the Live Stop.  As noted earlier, the Municipal Court docket reflects that Clark did not appear at the summary trial adjudicating the violation of 75 Pa. Cons. Stat. § 1543(a), which prohibits the operation of a vehicle while that privilege is suspended or revoked, and was found guilty on February 4, 2026.  *See Clark*, No. MJ-01001-TR-0072300-2025.

14

a substantive due process challenge to an action taken by a government official, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399–400 (3d Cir. 2003) ("[O]ur cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.").

Clark falls far short of pleading a plausible substantive due process claim. She provides nothing in her Complaint concerning the towing and impoundment of her car that implicates substantive due process. *See, e.g., Kelly v. Rice*, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005) ("Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of 'substantive due process.'"). "While being issued a parking citation or having one's car towed may be unpleasant and disruptive, it is not activity that 'shocks the conscience.'" *Fullman v. City of Philadelphia,* No. 24cv682, 2026 WL 736307, at *8 (E.D. Pa. Mar. 16, 2026). The Court will dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[11]

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Clark's Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Clark will be permitted leave to file an amended complaint against the individual Defendants if she is able to—***in good faith***—allege additional facts about how her civil rights were violated and how each Defendant was

---

[11] Because Clark has not adequately pleaded a plausible underlying constitutional violation, there is no basis for a *Monell* claim against the City or the PPA. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")).

involved.  She may also amend her claims asserted pursuant to *Monell*, again if she can—***in good***

***faith***—allege additional and sufficient facts that plausibly could form the basis of a *Monell*

claim.  An order follows with additional information on amendment.

**IT IS SO ORDERED.**


*/s/ Karen Spencer Marston*
**KAREN SPENCER MARSTON, J.**

16