**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOY LUCRETIA CLARK,<br>　　Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 26-104** |
| | : | |
| PHILADELPHIA PARKING | : | |
| AUTHORITY, *et al.*, | : | |
| 　　Defendants. | : | |

**MEMORANDUM**

**MARSTON, J.**                                                                                          **June 15, 2026**

Plaintiff Joy Lucretia Clark filed this *pro se* civil action asserting violations of her civil rights when her car was towed and impounded.  Upon screening under 28 U.S.C. § 1915(e)(2), the Court granted her leave to proceed *in forma pauperis*, dismissed the original Complaint for failure to state a claim, and permitted Clark to file an amended complaint.  (*See* Doc. Nos. 9, 10); *Clark v. Phila. Parking Auth.*, No. 26104, 2026 WL 982627, at *1 (E.D. Pa. Apr. 13, 2026).  On April 15, 2026, Clark returned with an Amended Complaint, (*see* Doc. No. 12), and then, on April 29, 2026, she filed a Second Amended Complaint ("SAC"), (*see* Doc. No. 13).  The Court will construe Clark's filing of the Second Amended Complaint as a motion for leave to amend as well as a Second Amended Complaint, grant the motion, and screen the Second Amended Complaint as the operative pleading.[1]  The Court will dismiss the Second Amended Complaint with prejudice.

---

[1] Under the Federal Rules, a party may amend her complaint *once* as a matter of course according to the provisions of Rule 15(a)(1), but otherwise it may only amend with an opposing party's written consent "or the court's leave."  Fed. R. Civ. P. 15(a)(2).  In light of the plaintiff's *pro se* status, the Court will grant her leave to amend her Amended Complaint and considers the merits of the SAC.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]

On November 26, 2025, Clark's vehicle was towed and impounded by the Philadelphia Parking Authority ("PPA").[3]  (SAC at 2.)  The PPA issued a "Live Stop Impoundment Notice to Owner" addressed to Clark and dated November 27, 2025, which memorialized the November 26th impoundment of the car as authorized by the Philadelphia Municipal Court Traffic Division and pursuant to Pennsylvania Motor Vehicle Code 75 Pa. Cons. Stat. § 6309.2.[4]  (Doc. No. 13-3 at 2.)  The Notice stated that Clark could recover her vehicle by appearing in person at the Philadelphia Municipal Court Traffic Division to resolve outstanding registration or operating privilege issues; paying all outstanding parking, red light camera, and speed camera violations; and bringing the administrative release from the Traffic Court and other documents to the tow lot.  (*Id.*)  The Notice continued that if Clark could not pay the entire amount due for her

---

[2] The factual allegations set forth in this Memorandum are taken from Clark's Second Amended Complaint ("SAC") and attached exhibits.  (Doc. No. 13.)  The Court adopts the pagination assigned by the CM/ECF docketing system.  Grammar, punctuation, and emphasis in quoted material are cleaned up where necessary.

[3] The factual allegations made in the SAC are more threadbare than those in her original Complaint, and Clark relies heavily on attached exhibits to provide the factual background.   Although the Court may *consider* exhibits attached to a complaint in conducting statutory screening, a plaintiff may not state a claim by relying solely on exhibits.  *See Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and, hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)); *see also Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint.").  As explored in more detail below, in many respects the exhibits fail to support Clark's conclusory averments made in the SAC.

[4] Publicly available court dockets reflect that, on November 26, 2025, Clark was issued a citation for driving while her operating privilege was suspended or revoked, in violation of 75 Pa. Cons. Stat. § 1543(a).  *See Commonwealth v. Clark*, No. MJ-01001-TR-0072300-2025 (M.J. Philadelphia).  The Municipal Court Traffic Division scheduled the matter for a summary trial on February 4, 2026.  *Id.*  The case docket reflets that proceedings occurred on February 4, but Clark was not present.  *Id.*  Clark was found guilty of the offense.  *Id*.

violations, she could inquire about a payment plan. (*Id*.) The Notice further warned that if the vehicle remained impounded for 15 days and she had not requested an administrative hearing or made payment arrangements in that time, the PPA would file a petition in the Philadelphia Court of Common Pleas to auction the vehicle. (*Id*.) The Notice contained a "[p]lanned auction date" of December 29, 2025. (*Id*.)

On December 4, 2025, Clark filed a petition for emergency relief from the auction of her vehicle in the Philadelphia County Court of Common Pleas. *See Clark v. Phila. Parking Auth*., No 251201058 (C.P. Philadelphia). The Court of Common Pleas entered an *ex parte* order on December 5, 2025, partially granting Clark's request to temporarily stay the auction of her vehicle. *See id*. (Docket Entry of Dec. 5, 2025). The order also directed that "Plaintiff may seek release of the vehicle and abatement of storage fees through the proper procedural channel of an administrative hearing before Municipal Court Traffic Division, and any subsequent appeal of such a hearing to Common Pleas, as noted in the PPA Live Stop Impoundment Notice included as an exhibit in her petition." *Id.* (Ex Parte Order entered Dec. 5, 2025, at n.1). The Court of Common Pleas later amended the order to impose the stay for ninety days from December 5, 2025. *Id.* (Docket Entry Dec. 23, 2025). The docket reflects that that Court denied additional motions filed by Clark, for lack of jurisdiction and as procedurally improper because she had not exhausted her administrative remedies. *See id.* (Docket entries Dec. 22, 2025, Jan. 5, 2026).

On January 6, 2026, the day after the Court of Common Pleas dismissed her motion for failure to exhaust administrative remedies, Clark filed this federal civil rights action with a motion for a temporary restraining order. (*See* Doc. No. 2 at 1, Doc. No. 3.) The Court denied her motion for a temporary restraining order on January 9, 2026. (Doc. No. 7.) On April 13, 2026, the Court dismissed her original Complaint lodged against the PPA, the City of

3

Philadelphia ("the City"), and John and Jane Does, because Clark failed to state any claims for violations of her constitutional rights under § 1983. Namely, the Court rejected Clark's claims for unlawful seizure, procedural and substantive due process deprivations, and for municipal liability under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)). *See Clark*, 2026 WL 982627, at *4–7. The Court also dismissed her request for declaratory relief as improper. *Id.* at *2 n.6. Clark was granted leave to amend. *Id.* at *7.

On April 15, 2026, the PPA issued another notification to Clark regarding her impounded car with detailed instructions on how to recover her vehicle. (Doc. No. 13-1 at 4.) The notice also provided that "THIS IS YOUR FINAL NOTICE," that she had ten days to remove personal belongings from her car, and that the planned auction date was set for May 5, 2026. (*Id.*) Clark filed an Amended Complaint in her civil matter in this Court on April 15. (*See* Doc. No. 12.) On April 20, 2026, the Court of Common Pleas entered an order authorizing the Philadelphia Municipal Traffic Division, through the PPA, to sell Clark's car at an auction on May 5, 2026. (Doc. No. 13-1 at 2.) Thereafter, on April 28, Clark attempted to make a "Right to Know" Request directed to Christine A. Trzaska, Deputy General Counsel of the PPA, via email. (Doc. Nos. 13-4 at 1-5, 13-5 at 1.) Trzaska responded on the morning of April 29 via email that, although she was not the Open Records Officer, she would forward Clark's request. (Doc. No. 13-5 at 1-2.) Trzaska directed Clark to the PPA website and the Right to Know policy, procedure, and contact information. (*Id.* at 1.) Trzaska further stated:

> As to your vehicle, I am attaching the PPA notices that were sent to you on November 27, 2025 when your vehicle was first impounded, and then again on April 15, 2026 advising you of the location of the vehicle, your right to retrieve any personal items, etc. These notices also outline the procedure and steps in obtaining a release for your vehicle. You were further advised of the same information through the PPA's court filings in response to your numerous petitions filed in the Court of Common Pleas, a March 6, 2026 court hearing in which you were in attendance and the several conversations between us. Furthermore, on March 6, 2026, in addition

4

> to giving you information about obtaining a vehicle release from Municipal Traffic Division, I also gave you a PPA print out of all of the relevant information as of that date concerning your impounded vehicle (date, location, outstanding fees, etc.), and advised you to go to the Bureau of Administrative Adjudication at 800 Arch Street if you were contesting the tow and storage fees.
> Please call the number listed in the notices attached to this email.  Because you have failed to take any of the proper administrative steps in obtaining the release of your vehicle, the vehicle is currently scheduled to be sold at a public auction on May 5, 2026.

(*Id.* at 2.)  That afternoon, Clark filed the SAC, a second Motion for a Temporary Restraining Order, and a "Motion to Preserve Evidence" in this Court.  (Doc. No. 13-6 at 1, Doc. Nos. 14, 15, 16.)  The Court denied the Motions on May 1, 2026.  (Doc. No. 17.)

In the SAC, Clark once again names the PPA and the City, plus "John Doe Police Officers 1-5," "John Doe PPA Employees 1-5," "John Does Traffic Personnel 1-5," and Trzaska. (SAC at 2.)  Clark claims that "Defendants have continued to deprive Plaintiff of property while conditioning release upon coercive payment demands, obstructing meaningful review, failing to preserve evidence, and pursing auction despite active federal litigation."  (SAC at 1.)  She continues that "[s]ince Plaintiff's initial filing, Defendants have issued additional auction notices, continued fee accrual, delayed records access, and refused substantive response to constitutional objections."  (*Id.*)  She asserts federal claims for unlawful search and seizure, procedural due process, First Amendment retaliation, and liability under *Monell*.[5]  (*Id*. at 4.)  She requests injunctive, declaratory, and monetary relief.[6]  (*Id*. at 6.)

---

[5] Clark attempts to raise a separate claim termed as "Spoliation/Failure to Preserve Evidence," apparently rooted in her purported demands for the PPA to preserve "evidence"—i.e., her impounded car—because she has filed a related civil action. (SAC at 5.)  She only requests injunctive relief to "preserve" the car by avoiding auction.  (*Id.*)  This claim is duplicative of the "Motion to Preserve Evidence," (Doc. No. 15), which the Court denied on May 1, 2026 because she failed to show good cause. (*See* Doc. No. 17 at 2 n.2 (citing Fed. R. Civ. P. 26(d)(1).)  This claim will accordingly be dismissed.

[6] As the Court previously instructed, Clark's request for declaratory judgment is improper because declaratory relief is unavailable to adjudicate past conduct. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is

## II.    STANDARD OF REVIEW

As Clark is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  A complaint states a claim if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in Clark's SAC as true, draw all reasonable inferences in her favor, and ask only whether the SAC contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

The Court construes the allegations of a *pro se* complaint liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their

---

also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84; *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").  The request will be dismissed.

complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Clark's SAC asserts claims under 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Claims Against John Doe Police Officers 1-5, John Doe PPA Employees 1-5, John Does Traffic Personnel 1-5

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  The Court previously dismissed Clark's claims asserted against John Does because she had not adequately alleged individual involvement in the purported violations of her constitutional rights. *Clark*, 2026 WL 982627, at

7

*3.  In her SAC, Clark again sues numerous John Doe Defendants, but she has made few efforts to distinguish their actions as she was instructed to do in the Court's Memorandum.  *Id*.; (*see* SAC at 2.)  In her SAC, she merely states that the John Doe Defendants "include officers, PPA employees, and administrative personnel who participated in the seizure, detention, fee accrual, denial of hearings, and/or obstruction." (SAC at 2.)  But she makes no factual allegations or legal claims against any Doe in the rest of the Complaint, nor does she even reference any conduct taken by a particular individual.  Because she has not described how each individual unknown defendant was involved in the events and occurrences giving rise to the claims, she has not stated a plausible constitutional violation under § 1983 against the Doe Defendants.  *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Moreover, the allegations throughout her SAC only collectively refer to "Defendants" (*see* SAC at ¶¶ 3, 4, 19, 23, 27, 28, 32, 33, 37, 39, 40, 43, 45), which is insufficient to attribute any individual liability under § 1983.  *See Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (affirming district court's conclusion that generalized reference to "officers" did not allege personal involvement); *Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that the "repeated and collective use of the word 'Defendants' fail[ed] to name which specific Defendant engaged in the specific conduct alleged" (quotation marks omitted)).  All claims Clark has asserted against John Doe Police Officers 1–5,

John Doe PPA Employees 1–5, and John Does Traffic Personnel 1–5 will be dismissed with prejudice for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

### B.    Procedural Due Process Claim

Clark asserts in her SAC that Defendants deprived her of adequate notice and a meaningful opportunity to be heard.  (SAC at 4.)  She further contends that she had secured a stay of the auction of her car which "required procedural safeguards and future petitioning for sale authorization." (*Id.* at 3.)  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  "[V]iolations of state or municipal law do not, standing alone, necessarily state constitutional claims under 42 U.S.C. § 1983."  *King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016).  The most critical aspect of due process is whether a party has had "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).  A litigant fails to state a procedural due process claim "if the state has an adequate post-deprivation procedure or remedy available." *Revell v. Port Auth. of N.Y. and N.J.*, 598 F.3d 128, 139 (3d Cir. 2010).  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Clark asserts that she has a property interest in the vehicle, but much like her original Complaint, she has not plausibly alleged that she experienced an absence of available due process after the car was towed and impounded.  The post-deprivation procedures for owners or lienholders to regain possession of an impounded vehicle are provided in 75 Pa. Cons. Stat. § 6309.2 and Philadelphia Code § 12-2406.  Section 6309.2 of the Pennsylvania Motor Vehicle Code specifically requires owners of cars impounded pursuant to a Live Stop to provide proof of registration and financial responsibility, pay all fines and costs associated with the towing and storage, and pay any other outstanding fines and costs.  79 Pa. Cons. Stat. § 6309.2(d)(1)(i) and (ii)(A).  The "Live Stop Impoundment Notice to Owner" issued to Clark on November 27 detailed the precise steps that she needed to take to recover possession of her vehicle, in light of her alleged offense of driving while her operating privilege was suspended.  (Doc. No. 13-3 at 1.) The April 15, 2026 notice reiterated those procedures.  (Doc. No. 13-2 at 4.)  The first step was to appear in the Philadelphia Municipal Court Traffic Division to obtain an Administrative Release by "resolv[ing] any outstanding vehicle registration and/or operating privilege issues." (*Id.*)  Second, Clark needed to appear in person at the Municipal Court or other authorized location and pay all outstanding violations and towing/storage fees or, if she could not afford that, inquire about a payment plan.  (*Id.*)  Third, she needed to bring the Administrative Release, payment receipt, and other required documents to the tow lot to obtain her car.  (*Id.*)  She does not allege that she availed herself of that process.

Although she vaguely attempts to assert that she has recently been denied process by the issuance of a new auction notice, (*see* SAC at 3), Clark alleges no facts to make that theory plausible.  In addition to the prior notices and directions provided, her exhibits indicate that the PPA apparently issued a new notice that again provided detailed instructions of the established

10

procedures, and the Court of Common Pleas issued an order setting the date for auction.  (*See* Doc. No. 13-1 at 2, 4.)   *Nowhere* in Clark's SAC does she assert that she followed the required procedures, or that the May 5, 2026 date of auction fell within the stay period (*e.g.*, ninety days from December 5, 2025, which would have expired in early March 2026).  Likewise, Clark's conclusory allegation that Defendant Trzaska "participated in post-seizure legal enforcement, notice, and refusal to substantively address preservation and constitutional issues," (*see* SAC at 2) is not only devoid of any actual facts, but it does not allege any conduct on Trzaska's part that deprived Clark of due process given the post deprivation procedures Clark had available that she failed to use.

Clark was afforded all the process due, but she did not utilize the procedures available to her.  *See Alvin*, 227 F.3d at 116 (explaining that, to state a procedural due process claim, the plaintiff must have used the available processes unless they are "unavailable or patently inadequate").  As before, Clark filed an Amended Complaint and then the Second Amended Complaint in this Court, claiming a procedural due process violation when she had not complied with the procedures afforded to her, despite redirection by the PPA, the Court of Common Pleas, and even this Court.[7]  Clark's failure to follow the procedures does not make the procedures themselves inadequate or unconstitutional.  *King v. Phila. Parking Auth*., 97 F. Supp. 3d 649, 657 (E.D. Pa. 2015) (concluding that plaintiff's failure to appeal enforcement of parking code "did not render unconstitutional the process he was given"), *aff'd sub nom., King v. City of*

---

[7] It does not appear that Clark fully availed herself of the opportunity to challenge the underlying offense that constituted the basis for the Live Stop, either.  As the Court has previously noted, the Municipal Court docket reflects that Clark did not appear at the summary trial adjudicating the violation of 75 Pa. Cons. Stat. § 1543(a), which prohibits the operation of a vehicle while that privilege is suspended or revoked, and was found guilty on February 4, 2026. *See Clark*, No. MJ-01001-TR-0072300-2025.

*Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016).  Further, Clark cannot circumvent the procedures "on the books" by filing an action in federal court to obtain the relief she desires. *Alvin*, 227 F.3d at 116.  For all of these reasons, Clark fails to state a plausible procedural due process claim, and it will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.    Unlawful Seizure Claim

Clark argues that "Defendants unlawfully seized and retained Plaintiff's property through unreasonable government action."  (SAC at 4.)  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Clark has failed to sufficiently clarify the basis for her Fourth Amendment claim against the remaining Defendants in her SAC.  Relevant to this count, she claims to dispute "the legality of the live-stop classification, procedural adequacy, and constitutional sufficiency of the seizure" apparently based on a "lack of contemporaneous explanation, barriers to recovery, and coercive release conditions."  (SAC at 2.)  But she does not allege plausible facts that could support a claim that the remaining Defendants illegally seized her car or that the seizure of her car was unconstitutional.  This claim fails for the same reasons as before.  *See Clark*, 2026 WL 982627, at *4–5.

The Court observes that, with respect to the towing and impoundment of her car, Pennsylvania law permits the immobilization and towing of vehicles when an officer confirms that a person is operating a vehicle while her operating privileges are suspended or revoked.  *See* 75 Pa. Cons. Stat. § 6309.2(a).[8]  Under that provision, the officer "shall immobilize the vehicle .

---

[8] 75 Pa. Cons. Stat. § 6309.2(a) provides, in relevant part: "If a person operates a motor vehicle . . . on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle . . . or, in the interest of public safety, direct that the vehicle be towed and stored by the

. . or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent . . . " *Id.* The state court docket reflects that, on November 26, Clark was cited for driving while her operating privilege was suspended or revoked, in violation of 75 Pa. Cons. Stat. § 1543(a). *See Clark*, No. MJ-01001-TR-0072300-2025. Once officers learned that Clark was operating the vehicle while her license was suspended or revoked—an offense Clark fails to mention in the SAC but for which she was found guilty on February 4, 2026, *in abesentia*—"it was permissible for them to tow the car pursuant to Pennsylvania law." *Perry v. Faddis*, No. 22-4012, 2023 WL 144432, at *5 n.11 (citing *Sheller v. City of Philadelphia*, No. 11-2371, 2012 WL 4754820, at *6 (E.D. Pa. Oct. 5, 2012) (explaining that the language of the statute "provides law enforcement officers with the option to tow based on their determination of the interest of public safety")). The Court will again dismiss Clark's Fourth Amendment allegation for failure to state a claim.

### D.    First Amendment Retaliation Claim

Clark asserts in her SAC that she "engaged in protected legal conduct including petitioners, federal filings, RTK requests, and constitutional objections," and that "Defendants' continued auction pursuit, procedural obstruction, and evidentiary threats constitute retaliatory adverse action." (SAC at 4.) In order to state a claim for retaliation under the First Amendment, a plaintiff must allege that "(1) he engaged in conduct or speech protected by First Amendment, (2) that public official took adverse action against the citizen, and (3) that the adverse action was prompted or caused by the citizen's exercise of First Amendment rights." *Miller v. Goggin*, 672 F. Supp. 3d 14, 45 (E.D. Pa. 2023) (quoting *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 431 (E.D. Pa. 2000)).

---

appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified."

Accepting that Clark's filing of a lawsuit in this Court is protected activity, *see Kegerise v. Susquehanna Twp. Sch. Dist.*, 325 F. Supp. 3d 564, 587 (M.D. Pa. 2018), she has not asserted any facts in the SAC to meet the other elements for a retaliation claim.  In particular, she has not plausibly alleged the causation element of a retaliation claim, namely that PPA's mere continued action of attempting to collect fees and auction Clark's car was "prompted or caused" by Clark's filing of this civil action in January 2026 (or of her filing of the Court of Common Pleas action in December 2025).  *See Miller*, 672 F. Supp. 3d at 45.  Although she makes ambiguous statements that Defendants used "procedural obstruction" and "evidentiary threats," she has not put forward any facts in the SAC that would support those theories.  Rather, as explained above, the public record indicates that Clark's own failures to follow available procedures resulted in the adverse action of which she complains.  *See supra* pp. 9-12.  Moreover, it should go without saying that, on the element of causation, the alleged adverse action must *follow* an alleged protected activity in an action for retaliation.  Clark's car was towed and impounded on November 26, 2025, and, on November 27, 2025, the PPA issued its first notice that it would petition to auction her car if the car remained impounded for fifteen days without a request for administrative hearing or payment arrangements being made.  (Doc. No. 13-3 at 1.) Clark cannot establish a retaliatory, causal link between her filing of a civil suit *over a month after* the PPA initiated its efforts to collect fees and schedule her car for auction.  The Court will dismiss Clark's First Amendment claim for failure to state a claim.

### E.   Constitutional Claims Against the City and PPA

Clark again names the City and PPA as Defendants in her SAC, and the Court will consider their liability together for the purposes of Clark's claims here.[9]  *See King*, 97 F. Supp.

---

[9] The liability of the City and PPA for alleged constitutional deprivations will differ in some situations.  *See King*, 654 F. App'x at 110 (confirming district court's assessment that the City could be

3d at 653-57 (analyzing claims against PPA as municipal liability claims under *Monell*). To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")).

Because Clark has not adequately pleaded a plausible underlying constitutional violation, there is no basis for a *Monell* claim against the City or the PPA. *See id.* Clark's *Monell* claims will be dismissed for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Clark's Second Amended Complaint with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). No further leave to amend will be given. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant

---

liable for any of plaintiff's claims but PPA would be liable only for claims related to ticketing enforcement). At this juncture, any distinction here is immaterial given Clark's failure to plausibly state any underlying violations of her constitutional rights.

"already had two chances to tell his story" ); *Posey v. Klinefelter*, No. 25-1428, 2025 WL 1937084, at *2 (3d Cir. July 15, 2025) (affirming dismissal where the "District Court's orders and the Magistrate Judge's reports and recommendations all informed Posey as to the ways in which the complaints were deficient and provided multiple opportunities to amend, and yet Posey repeatedly failed to do so" ).  An appropriate order dismissing this case will be entered separately.  *See* Fed. R. Civ. P. 58(a).